[No. B145867. Second Dist., Div. Seven. Mar. 21, 2002.]

TRADEWINDS ESCROW, INC., Plaintiff and Appellant, v.
TRUCK INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

Law Office of Alex Powell and Alex Powell for Plaintiff and Appellant.

Greines, Martin, Stein & Richland, Robert A. Olson, Edward L. Xanders; Tharpe & Howell, Timothy D. Lake and Louis K. Tsiros for Defendant and Respondent.

## OPINION

**LILLIE, P. J.**—Tradewinds Escrow, Inc. (Tradewinds) appeals summary judgment granted in favor of defendant Truck Insurance Exchange (Truck) in its action for breach of contract and breach of the covenant of good faith and fair dealing. Truck refused to defend a third party action against Tradewinds arising out of the failed sale of a home on the grounds the policy specifically excluded indemnity for actions based upon the furnishing of "escrow services," and refused to pay pre-tender defense costs and settlement costs Tradewinds incurred in connection with defending the underlying action.

Tradewinds contends the trial court erred in finding Truck had no duty to indemnify and hence no duty to defend. Tradewinds contends the policy provides numerous grounds for indemnity, the professional services exclusion does not apply, it is entitled to pre-tender legal fees, Truck is required to indemnify it for both pre-tender and settlement costs; and triable issues of fact exist with respect to its punitive damages claim.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Tradewinds is Truck's insured under a business owners insurance policy, which provided commercial property, commercial general liability (CGL) and commercial automobile coverage (the Policy). Tradewinds also carried errors and omissions coverage with Media One Professional (Media One).

On February 3, 1997, Allison Feltus (Feltus) commenced an action against Tradewinds, its president Michael G. Wuerth (Wuerth), Home Savings & Loan, and the sellers of a home. Feltus alleged seven causes of action.[1] Her claims against Tradewinds and Wuerth were based on her contentions that Tradewinds's failure to close the escrow caused her to lose her financing and be evicted from the premises. Feltus alleged the conduct was willful and done intentionally in concert with the sellers in order to misrepresent the true condition of the house and to realize a larger gain on the sale of the premises. She contended Wuerth defamed her, harassed her, refused to return her deposit, and parked his car in front of the house and verbally assaulted her.[2]

Sometime after commencement of the Feltus action, Tradewinds tendered defense to its errors and omissions carrier, Media One, and Media One

---

[1]The operative pleading, a second amended complaint filed May 8, 1997, alleged causes of action for breach of contract, intentional misrepresentation, constructive trust, accounting, conversion, unfair business practices, and intentional infliction of emotional distress.

[2]The record is unclear whether Wuerth, the sellers, or both parked their car in front of the house while Feltus was living there, in an effort to get her to leave. The second amended complaint alleges the sellers engaged in this conduct.

provided Tradewinds with a defense to the Feltus action. Apparently, Media One refused to pay Tradewinds $20,000 in legal fees Tradewinds incurred prior to the tender to it of the Feltus action. Tradewinds contends the $20,000 consisted of a $10,000 deductible and a settlement of $10,000 in disputed fees.

Tradewinds tendered defense of the Feltus action to Truck in June 1998. Tradewinds explained that it did not earlier tender the lawsuit because it believed that the "obvious coverage" for the Feltus action was with Media One, its errors and omissions carrier. Tradewinds contends Wuerth did not initially understand that the Truck policy could potentially apply to the Feltus action. In July 1998, summary judgment was granted in favor of the sellers in the Feltus action.

On September 22, 1998, Truck refused to defend on the grounds that the lawsuit arose out of Tradewinds's failure to render professional services and was therefore within a specific policy exclusion for professional services.[3] On December 2, 1998, Tradewinds settled the Feltus action for $25,000. Of this sum, Media One paid $15,500, Wuerth paid $5,000, and Tradewinds waived $4,500 in attorneys' fees that Feltus owed to it.

On November 9, 1999, Tradewinds commenced the instant action against Truck for breach of contract and breach of the covenant of good faith and fair dealing based upon Truck's failure to defend. Tradewinds sought its attorneys' fees and costs incurred in defending and settling the Feltus action. This included the $20,000 in attorneys' fees expended before the tender to Media One and the $9,500 that Tradewinds contributed to the settlement of the Feltus action. Tradewinds also sought punitive damages.

Truck moved for summary judgment, contending there was no duty to defend the first six causes of action.[4] Truck based this argument on the policy schedule excluding coverage for professional services as "escrow agents." With respect to the seventh cause of action for emotional distress,

---

[3]That provision provided that: "With respect to any professional services shown in [this] Schedule, this insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' due to the rendering or failure to render any professional service."

[4]The Policy at issue is a standard CGL policy and provided that Truck would pay Tradewinds sums that Tradewinds became "legally obligated to pay as damages because of 'bodily injury,' or 'property damage' to which this insurance applies" and would defend any lawsuit "seeking those damages." "Bodily injury" was defined as "bodily injury, sickness, disease, sustained by a person" and the policy only applied to "bodily injury" "caused by an 'occurrence.'" "Occurrence" in turn was defined as "an accident." Finally, the Policy provided that "[t]here is no coverage for any 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

Truck contended it was without merit because it was based on economic loss and barred by Insurance Code section 533's prohibition on coverage for willful conduct. In addition, Truck contended that because Tradewinds first tendered the defense to its errors and omissions carrier, Media One, and incurred the $10,000 of attorneys' fees voluntarily, Truck was not liable for said fees.

Tradewinds opposed the motion on the grounds that Tradewinds's conduct in connection with the escrow was outside the scope of the rendering of professional services. Tradewinds pointed to Feltus's factual allegations that Wuerth had wrongfully cancelled the escrow, refused to return her deposit, engaged in discriminatory conduct, and demeaned her with obscenities. Tradewinds also contended the professional services exclusion did not trump all other coverage, and argued that because a car had been used in connection with some of Tradewinds's wrongful conduct, the conduct was covered under the business automobile portion of the policy. Tradewinds also contended Feltus's emotional distress claims were covered because they were the result of defamation, conduct covered by the policy. Finally, Tradewinds argued its entitlement to pre-tender legal fees and punitive damages raised questions of fact.

The trial court granted the motion, finding that the legal fees Tradewinds sought were incurred prior to tender of the defense to Truck, and thus there was no causal connection between the fees and denial of coverage; the contract of insurance did not provide for coverage of the claims in the Feltus action, and thus Truck had no duty to indemnify and consequently no duty to defend; and Tradewinds failed to proffer evidence which raised a triable issue of fact.

## DISCUSSION

Tradewinds contends Truck owed it a defense because there was potential for liability under several distinct legal theories, including the business automobile policy and the personal injury and property damage portions of the CGL policy. Tradewinds also contends the professional services exclusion does not apply to Feltus's allegations that Tradewinds and Wuerth parked on her property, made threats against her, and defamed her. Tradewinds also contends Truck was required to indemnify it for its settlement contribution, and triable issues of fact exist with respect to its bad faith and punitive damages claims.

Truck essentially argues (1) the CGL policy did not cover the Feltus action because it arose out of the provision of escrow services, which were

expressly excluded, and (2) even if the professional services exclusion did not apply, Tradewinds' intentional acts are not covered. (See e.g., *Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, 860-861 [13 Cal.Rptr.2d 318] [intentional acts not covered].)

A. *The "No Voluntary Payments Provision" of the Policy Precludes Recovery of the $20,000 in Pre-Tender Attorneys' Fees.*

■ The CGL portion of the Policy contains a "no voluntary payments provision" at section IV, paragraph 2(d) that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, except for first aid, without our consent." Such clauses bar reimbursement for pre-tender expenses based on the reasoning that until the defense is tendered to the insured, there is no duty to defend. (*Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 976-977 [94 Cal.Rptr.2d 516].) They are also based on the equitable rule that " 'the insurer [is invested] with the complete control and direction of the defense' " and cannot be expected to pay for that which it does not control. (*Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges, A. G.* (1970) 3 Cal.3d 434, 449 [91 Cal.Rptr. 6, 476 P.2d 406].) Only when the insured has requested and been denied a defense may it ignore the "no voluntary payment" provision of the policy. (*Truck Ins. Exchange v. Unigard Ins. Co., supra,* 79 Cal.App.4th at p. 981.) Thus, where the insured has failed to demand a defense and relinquish control over the case, it cannot expect the quid pro quo of pre-tender voluntary payments, expenses, or other obligations incurred by the insured pre-tender without the insurer's consent.[5] (*Truck Ins. Exchange v. Unigard Ins. Co., supra,* at p. 981.)

However, even if the policy contains a no voluntary payments provision, pre-tender expenses are not barred if they were incurred involuntarily. Generally, voluntariness is a question of fact. (*Fiorito v. Superior Court* (1990) 226 Cal.App.3d 433, 440 [277 Cal.Rptr. 27] (*Fiorito*).) In *Fiorito,* the court reversed a judgment sustaining a demurer, and pointed out that the insured's pleading was sufficient to raise facts whether the pre-tender expenses were voluntarily paid. (*Ibid.*) However, the question of voluntariness may be decided as a question of law on undisputed facts. (*Shell Oil Co. v. National Union Fire Ins. Co.* (1996) 44 Cal.App.4th 1633, 1648-1649 [52 Cal.Rptr.2d 580]; cf. *Jamestown Builders, Inc. v. General Star Indemnity Co.* (1999) 77 Cal.App.4th 341, 348 [91 Cal.Rptr.2d 514] (*Jamestown*); *Faust v. The Travelers* (9th Cir. 1995) 55 F.3d 471, 473 [where no dispute of material fact, voluntariness may be decided as question of law].)

---

[5]Errors and omissions policies, however, often authorize the insured to incur reimbursable expenses with the written consent of the insurer. (*Stein v. International Ins. Co.* (1990) 217 Cal.App.3d 609, 615 [266 Cal.Rptr. 72].) This permits the insured to investigate a potential claim. (*Ibid.*)

*Jamestown* pointed out that payments may be involuntary where the circumstances of the case show the payments were out of the insured's control. "This situation might occur where the insured is unaware of the identity of the insurer or the contents of the policy." (*Jamestown, supra,* 77 Cal.App.4th at p. 348.) In *Fiorito,* the insureds waited four months before tendering a defense to their insurer, in the meantime having hired their own counsel while they searched for insurance policies. (*Fiorito, supra,* 226 Cal.App.3d at p. 436.) As a pleading matter, factual issues existed whether this indicated the pre-tender costs were involuntary. (*Id.* at p. 440.) In *Jamestown,* however, reimbursement was denied because the insured knew of the policy, "had ample time to review the policy, investigate the claims, and tender them" to the insurer, but took its time notifying the insurer of the potential claim. (*Jamestown, supra,* at p. 348.) Similarly, where the urgency of time pressures requires the insured to expend money pre-tender, the no voluntary payments provision will not apply. (*Northern Ins. Co. of New York v. Allied Mut. Ins.* (9th Cir. 1992) 955 F.2d 1353, 1360.) In *Faust,* the insured waited four months after the filing of a lawsuit to tender the defense to its insurer. During the interim, it had retained its own counsel to defend the action, which was dismissed. The plaintiff filed another lawsuit against the insured; the insured then tendered the defense of both actions to the insurer. As a matter of law, the court found that the four-month delay demonstrated no involuntariness of pre-tender defense costs in the first action. (*Faust v. The Travelers, supra,* 55 F.3d at p. 473.)

Tradewinds contends that because Truck was not prejudiced by the delay, the pre-tender costs must be reimbursed, or at the very least, factual questions exist precluding summary judgment. We first point out that a separate showing of prejudice is not part of the equation in evaluating denial of pre-tender costs. (*Xebec Development Partners, Ltd. v. National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 533 [15 Cal.Rptr.2d 726].) *Xebec* set forth the rationale as an issue of relevance because notice was a condition precedent to the right to indemnity. (*Id.* at p. 566; *Faust v. The Travelers, supra,* 55 F.3d at pp. 472-473; *Jamestown, supra,* 77 Cal.App.4th at p. 350 [no prejudice showing required because insurer did not seek to avoid performance based on tardy tender].)

■ Second, Tradewinds does not point to any facts in the record demonstrating it was under any kind of duress before tendering the claim to Truck. Instead, the facts in the instant case show that Tradewinds first tendered defense to its errors and omissions carrier, Media One, but the record does not disclose when this occurred, or when Tradewinds incurred the pre-tender expenses for which it now seeks reimbursement. However, we can assume that the expenses were incurred between January 1997 and June

1998. Tradewinds offers no explanation for this 17-month delay other than Wuerth did not believe the Truck policy covered the Feltus action. There was no searching for unknown policies or confusion over the identity of Tradewinds's CGL insurer. Rather, Tradewinds was unsuccessful with its errors and omissions carrier and thus sought to see if the CGL policy might help with its problems, and this delay denied Truck the opportunity to control the expenditure of defense costs. (*Jamestown, supra,* 77 Cal.App.4th at p. 349 [insured's ignorance of policy rights does not extend time within which it was required to take action].) We therefore find that Tradewinds may not recover its pre-tender defense costs in the sum of $20,000.

B. *Truck Is Not Liable for Post-Tender Defense Costs or Indemnity.*

 1. *Any Alleged Breach of the Duty to Defend Did Not Cause Tradewinds Any Damage Because Media One Provided a Defense.*

█ An insurer's breach of the duty to defend is actionable as breach of contract; where the refusal to defend is unreasonable, it is actionable as a tort. (*Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 831 [61 Cal.Rptr.2d 909].) Even if coverage is ultimately denied and hence there is no duty to indemnify, the insured may nonetheless recover the costs incurred in defense of the action. (*Ibid.*) The rationale is that if there was a potential for recovery at the outset of the lawsuit, the duty to defend was implicated. However, such costs may not be recovered where other insurers were on the risk and assumed the insured's defense. (*Ringler Associates, Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1187 [96 Cal.Rptr.2d 136].) *Ringler* conclusively demonstrates that Tradewinds is not entitled to post-tender defense costs because Tradewinds admits Media One handled the defense of the Feltus action.

 2. *Truck Has No Duty to Indemnify Because the Feltus Action Is Not Within the Scope of the CGL Policy.*

Nonetheless, *Ringler* is not dispositive of the issue of Truck's liability, as Truck contends, because Tradewinds also seeks damages for the costs of settlement, i.e., indemnity. Where the insured settles the underlying claim, we must also consider the issue of the duty to indemnify, because if it turns out the policy covered the claim, the amount of reasonable, good faith settlement payments made by the insured are recoverable. (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].) Thus, our analysis also requires us to determine whether Truck had a duty to indemnify Tradewinds for the conduct alleged. In evaluating indemnity in this instance, because the matter has concluded,

we are not concerned with the potential for coverage (the criterion for evaluating duty to defend claims) but whether the language of the policy actually supports coverage.[6]

 CGL policies are limited to providing coverage for accidental occurrences, and do not provide coverage for professional negligence claims. (*Ray v. Valley Forge Ins. Co.* (1999) 77 Cal.App.4th 1039, 1047 [92 Cal.Rptr.2d 473].) Furthermore, "bodily injury" coverage and "property damage" loss provisions do not cover economic loss resulting from professional negligence. (*Allstate Ins. Co. v. Interbank Financial Services* (1989) 215 Cal.App.3d 825, 830-831 [264 Cal.Rptr. 25].) Hence, CGL policies often contain exclusions for loss resulting from the rendering of or failure to render professional services. (*Northern Insurance Co. v. Superior Court* (1979) 91 Cal.App.3d 541, 543-544 [154 Cal.Rptr. 198].)

"Professional services" are defined as those " 'arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.' " (*Hollingsworth v. Commercial Union Ins. Co.* (1989) 208 Cal.App.3d 800, 806 [256 Cal.Rptr. 357].) It is a broader definition than "profession," and encompasses services performed for remuneration. (*Id.* at p. 807.)

Thus, courts have held numerous circumstances fall within the exclusion for professional services under a CGL policy, with the unifying factor being whether the injury occurred during the performance of the professional services, not the instrumentality of injury. (*Antles v. Aetna Casualty & Surety Co.* (1963) 221 Cal.App.2d 438, 443 [34 Cal.Rptr. 508] [chiropractic patient burned by defective heat lamp not covered by CGL policy because it occurred during rendering of professional services]; see also *Hollingsworth v. Commercial Union Ins. Co., supra,* 208 Cal.App.3d at p. 810.) On this standard alone, all of the claims alleged in the instant case would fall within the professional services exclusion because the alleged wrongful acts were committed during the performance of professional services, namely, the rendering of escrow services.

---

[6]In an interesting wrinkle of insurance law, default judgments are recoverable without a showing of indemnity. Where the insured is financially unable to mitigate damages from the breach of the duty to defend by hiring its own counsel, a default judgment is considered a consequential damage of the breach of the duty. (*Amato v. Mercury Casualty Co., supra,* 53 Cal.App.4th at p. 833.) An insurer may even be liable for a judgment on a claim for which no coverage existed where it breached the duty to defend because "otherwise an insurance carrier could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification." (*Mullen v. Glen Falls Ins. Co.* (1977) 73 Cal.App.3d 163, 173 [140 Cal.Rptr. 605].) These issues are not before us because Tradewinds had defense counsel and the matter was settled. Because Truck is not liable for defense costs on any theory, breach of the duty to defend is no longer relevant to our discussion.

(5) Furthermore, the policy at issue excludes intentional conduct, providing at section I, paragraph 2(a) that it does not cover " '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." This phrase covers intentional, as opposed to negligent, conduct. (See, e.g., *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1085 [17 Cal.Rptr.2d 210, 846 P.2d 792]; *J. C. Penney Casualty Ins. Co. v. M. K.* (1991) 52 Cal.3d 1009, 1020 [278 Cal.Rptr. 64, 804 P.2d 689]; *B & E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 94 [9 Cal.Rptr.2d 894].) The Feltus action claims for misrepresentation, conversion, unfair business practices, and intentional infliction of emotional distress would be excluded by the plain language of the policy because the conduct alleged was intentional.[7] In addition, to the extent the Feltus action states a claim for intentional infliction of emotional distress, it would be excluded. (*Aim Insurance Co. v. Culcasi* (1991) 229 Cal.App.3d 209, 220-221 [280 Cal.Rptr. 766] [bodily injury coverage does not include emotional distress claims].)

Furthermore, intentional acts of the type alleged in the complaint are not covered by standard CGL policies on the rationale the intentional conduct does not constitute an "accident" or "occurrence" within the meaning of the policy. (*Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787, 810 [26 Cal.Rptr.2d 391] [" 'accident' " is defined as " ' " 'an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause' " ' "].) On this rationale, the claims for misrepresentation, conversion, and unfair business practices would be excluded. (See, e.g., *Collin v. American Empire Ins. Co., supra,* at pp. 812-814 [conversion, misrepresentation, and unfair competition excluded from CGL coverage].) In addition, to the extent the Feltus action states a claim for defamation, it would also be excluded. (*Allstate Ins. Co. v. LaPore* (N.D.Cal. 1991) 762 F.Supp. 268, 271 [exclusion for defamation because such tort cannot occur accidentally].)

Finally, extracontractual limitations on the provision of indemnity for intentionally wrongful conduct are embodied in Insurance Code section 533, which is implied in every contract, and provides that " '[a]n insurer is not liable for a loss caused by the willful act of the insured. . . .' " (*State Farm Fire & Casualty Co. v. Dominguez* (1982) 131 Cal.App.3d 1, 4 [182 Cal.Rptr. 109].) This limitation, in addition to the above, would apply to Tradewinds's assertion that its automobile policy somehow covers the conduct at issue because one of the acts complained of was committed while one of the

---

[7]We point out the claims for constructive trust and accounting seek remedies, and are based upon the underlying misrepresentation claims. (See *Michaelian v. State Comp. Ins. Fund* (1996) 50 Cal.App.4th 1093, 1114 [58 Cal.Rptr.2d 133].)

insureds was in a car. Furthermore, in order to invoke the coverage of the automobile policy, an automobile " 'must be a substantial factor or predominating cause' " of the alleged injury, which was not the case here. (*Continental Heller Corp. v. Amtech Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 506, fn. 2 [61 Cal.Rptr.2d 668]; *American Nat. Property & Casualty Co. v. Julie R.* (1999) 76 Cal.App.4th 134, 141-142 [90 Cal.Rptr.2d 119] [no coverage under automobile policy for rape where car was used for rape and to block victim's exit].)

DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Woods, J., and Perluss, J., concurred.