[No. B155799. Second Dist., Div. Eight. Dec. 20, 2002.]

IVAN INSUA, Plaintiff and Appellant, v.
SCOTTSDALE INSURANCE COMPANY, Defendant and Respondent.

## COUNSEL

John A. Belcher for Plaintiff and Appellant.

Selman Breitman, Alan B. Yuter and Rachel E. Hobbs for Defendant and Respondent.

## OPINION

**RUBIN, J.**—Ivan Insua doing business as Ivan Insua Construction Company (appellant) appeals from the judgment entered against him and in favor of Scottsdale Insurance Company (respondent), following a court trial on appellant's complaint for, among other things, breach of contract arising out of respondent's refusal to indemnify appellant for costs he incurred defending a lawsuit. Appellant contends the trial court's ruling was erroneous as a matter of law for the following reasons: (1) California Insurance Code section 554 precludes respondent from objecting to appellant's belated tender of the claim; (2) respondent's unequivocal denial of coverage under the policy bars it from invoking a no-voluntary-payments provision as a defense; and (3) under an "as soon as practicable" provision, respondent was required to establish it was prejudiced by appellant's late tender. After review, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant is an architect and licensed general contractor. He was insured by respondent under a comprehensive commercial general liability policy from September 30, 1994, through September 30, 1995 (the policy). In pertinent part, section IV, paragraph 2 of the policy provides: "(a) You must see to it that we are notified as soon as practicable of an 'occurrence' or an

offense which may result in a claim. . . . [¶] (b) If a claim is made or 'suit' is brought against any insured, you must: [¶] . . . [¶] (2) Notify us as soon as practicable. [¶] You must see to it that we receive written notice of the claim or 'suit' as soon as practicable. . . . [¶] . . . [¶] (d) *No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*" (Italics added.)

On September 24, 1996, Dianne Francisco brought suit against appellant and others based upon allegations of defective workmanship in construction and remodeling work appellant performed on her home (the underlying action).

Appellant did not give respondent notice of the underlying action because, he explained, he could not find the policy. Although appellant could not recall searching for the policy while the underlying action was underway, his attorney in that action recalled appellant did so, albeit without success. Appellant's office manager, Margaret Caputo, recalled receiving instructions from appellant to gather all materials relating to Francisco's claim, including all insurance policies, soon after the complaint was filed. Caputo did not recall ever finding the policy. Neither appellant nor Caputo recalled ever contacting the insurance broker who issued the policy to request a copy.

The underlying action was arbitrated before the American Arbitration Association during the summer of 1999, and an award in favor of appellant was issued on September 14, 1999.

In October 1999, after the underlying action had been resolved, the policy "was mysteriously found." In a letter to respondent dated October 21, 1999, appellant's attorney requested reimbursement of $47,000 in attorney's fees and costs appellant incurred defending the underlying action.

On November 5, 1999, respondent denied reimbursement of appellant's defense costs because the policy excluded coverage for incorrectly performed work. In January 2001, respondent agreed to reconsider its position. Appellant did not provide respondent with a copy of the complaint in the underlying action until February 8, 2001. In a letter dated February 19, 2001, respondent denied reimbursement because: (1) appellant continued to be engaged in operations on the project after the policy had expired; (2) the attorney's fees were incurred before the matter was tendered to respondent; and (3) the policy contained a no-voluntary-payments provision. This appears to be the first written notice to appellant that respondent was relying on the no-voluntary-payments provision to deny reimbursement of the pretender defense costs.

On March 2, 2001, appellant filed the complaint in the instant action for declaratory relief, breach of contract and bad faith. Respondent generally denied the allegations of the complaint and asserted as affirmative defenses, among other things: appellant failed to notify respondent of any occurrence giving rise to a claim under the policy "as soon as practicable"; various policy exclusions applied; and the attorney's fees and costs paid by appellant were voluntary payments under the policy.

On August 8, 2001, the trial court denied respondent's motion for summary judgment, finding there to be triable issues of fact as to: (1) whether the policy's no-voluntary-payments provision included defense costs; and (2) whether appellant's failure to tender the claim prior to incurring the defense costs was voluntary.

During a two-day judge trial, appellant called three witnesses and respondent called none. The trial court rendered judgment in respondent's favor on November 2, 2001. In a written statement of decision, the trial court found "no reasonable grounds for [appellant] to have waited until October of 1999 to have tendered" the defense in the underlying action. It described as "mysterious" the late discovery of the policy, three years after the underlying suit was filed. The trial court also found appellant's excuses "not plausible," and reasoned it was more probable someone on appellant's side decided there was no coverage under the policy. The trial court concluded: "[Appellant] has breached the voluntary payments provision of the insurance contract . . . and is therefore barred from recovery. Prejudice need not be shown. See *Truck Insurance Exchange v. Unigard Insurance Company* [(2000)] []79 Cal.App.4th 966 [94 Cal.Rptr.2d 516] at 977. The court rejects [appellant's] argument that Insurance Code section 554 precludes the defense of no voluntary payments in the context of this lawsuit. Waiver in the delay in presenting the loss by [appellant] is not relevant to the voluntary payments provision." Judgment was entered on December 13, 2001.

Appellant filed a timely notice of appeal.

### DISCUSSION

1. *Objection to Late Tender of Claim Is Not Waived Under Insurance Code Section 554 Where Policy Contains a No-voluntary-payment Provision and Only Issue Is Reimbursement of Pre-tender Defense Costs*

Insurance Code section 554 (section 554) provides: "Delay in the presentation to an insurer of notice or proof of loss is waived . . . if [the insurer] omits to make objection promptly and specifically upon that

ground." Appellant contends the trial court erred in finding section 554 did not apply to denial of a claim based on a no-voluntary-payment provision. He argues a no-voluntary-payment provision should be treated the same as a timely notice provision and cannot be used to excuse an insurer from compliance with section 554. Appellant maintains that a no-voluntary-payments provision is void as a matter of law to the extent it acts to waive the insurer's compliance with section 554. We disagree.

a. *A no-voluntary-payments provision is not void as a matter of law.*

■ The general validity of no-voluntary-payment provisions in liability insurance policies is well established. In *Gribaldo, Jacobs, Jones & Associates v. Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434 [91 Cal.Rptr. 6, 476 P.2d 406] (*Gribaldo*), our Supreme Court observed that such clauses are common " 'to prevent collusion as well as to invest the insurer with the complete control and direction of the defense or compromise of suits or claims. . . .' [Citation.]" (*Id.* at p. 449; *Truck Ins. Exchange v. Unigard Ins. Co., supra,* 79 Cal.App.4th 966, 977 (*Truck*) [" 'California law enforces such no-voluntary-payments provisions in the absence of economic necessity, insurer breach, or other extraordinary circumstances. . . .' "]; *Jamestown Builders, Inc. v. General Star Indemnity Co.* (1999) 77 Cal.App.4th 341, 346 [91 Cal.Rptr.2d 514] (*Jamestown*) [same].)

b. *A no-voluntary-payments provision is not inconsistent with section 554.*

■ Appellant's contention that a no-voluntary-payment provision is inconsistent with section 554 and should be treated the same as a timely notice provision, i.e., it should be deemed waived by the insurer if not promptly stated as an objection to the insured's claim, is without merit. ■ The rule that failure to comply with a policy notice or proof of loss provision is deemed waived if not promptly objected to by the insurer, is consistent with the general principle, articulated 40 years ago by the court in *Maier Brewing Co. v. Pacific Nat. Fire Ins. Co.* (1963) 218 Cal.App.2d 869, 879 [33 Cal.Rptr. 67], that an insurer cannot deny all liability, and at the same time be permitted to stand on a provision inserted in the policy for its benefit. In *Alta Cal. Regional Center v. Freemont Indemnity Co.* (1994) 25 Cal.App.4th 455 [30 Cal.Rptr.2d 841] (*Alta*), the court explained the reason for the general rule is that, where the insurer denies all liability under the policy, the insured is misled into believing it

would be futile to perform any affirmative obligation under the policy.[1] In other words, the insurer is deemed to have waived the insured's failure to perform because the nonperformance is attributable to the insurer's conduct. (*Alta*, at pp. 467-468.) Thus, the cases in which a notice or proof of loss provision has been deemed waived by the insurer usually involve an insured lulled by the insurer's silence into believing it had complied with the policy notice and/or proof of loss provisions.[2] Consistent with this rule, section 554 operates to deem an insurer's belated objection to an untimely notice of claim or proof of loss waived if not promptly called to the attention of the insured. Complementing the general rule, section 554 prevents an insurer from lulling the insured into believing that notice and proof of loss are unnecessary.

The evil that section 554 is intended to avoid—misleading the insured into inaction—does not arise in the context of a no-voluntary-payments provision. Such provision typically bars "reimbursement for pre-tender expenses based on the reasoning that until the defense is tendered . . . there is no duty to defend. [Citation.]" (*Tradewinds Escrow, Inc. v. Truck Ins. Exchange* (2002) 97 Cal.App.4th 704, 710 [118 Cal.Rptr.2d 561] (*Tradewinds*).) Under the provision, only "*previous* voluntary payments by the insured are barred from indemnification." (*Jamestown, supra,* 77 Cal.App.4th at p. 350, original italics.) Once the insured has requested and been denied a defense by the insurer, "the insured may ignore the policy's provisions forbidding the incurring of defense costs without the insurer's prior consent . . . ." (*Gribaldo, supra,* 3 Cal.3d at p. 449; *Tradewinds, supra,* 97 Cal.App.4th at p. 710; *Truck, supra,* 79 Cal.App.4th at pp. 976-977; *Jamestown, supra,* 77 Cal.App.4th at p. 346.) However, if the insured makes no demand to defend, the no-voluntary provision lawfully precludes recovery of pre-tender costs. (*Gribaldo, supra,* 3 Cal.3d at p. 449.) In that

[1]*Alta* was disapproved on another point in *Waller v. Truck Insurance Exchange, Inc.* (1995) 11 Cal.4th 1, 34 [44 Cal.Rptr.2d 370, 900 P.2d 619].

[2]See, e.g., *Elliano v. Assurance Co. of America* (1970) 3 Cal.App.3d 446, 448-449 [83 Cal.Rptr. 509] (insurer waived requirement of formal proof of loss where insurer accepted insured's estimate and itemization of losses; entered into settlement negotiations with insured; and never denied insured suffered a covered loss or requested submission of formal proof of loss); *Estrada v. Indemnity Ins. Co.* (1958) 158 Cal.App.2d 129 [322 P.2d 294] (insurer waived failure to deliver copy of summons and complaint where to do so would be idle act and insurer not prejudiced: insurer had full knowledge of facts and circumstances and denied liability on sole ground occurrence not covered by policy); *Comunale v. Traders & General Ins. Co.* (1953) 116 Cal.App.2d 198, 202-203 [253 P.2d 495] (insurer waived insured's failure to submit written notice of accident); *Enfantino v. United States Fire Ins. Co.* (1931) 116 Cal.App. 729, 731-732 [3 P.2d 331] (insurer waived failure to submit proof of loss where, within time for presenting such proof, insurer denied liability and refused to pay loss on unrelated grounds); *Francis v. Iowa Nat. Fire Ins. Co.* (1931) 112 Cal.App. 565, 575 [297 P. 122] (insurer waived insured's failure to file proof of loss by dispatching adjuster immediately after the fire, adjuster obtained full report and told insured nothing more was needed).

setting, when the insurer invokes the protection of a no-voluntary-payments provision, it does not mislead the insured into believing that there is nothing more to be done. This is so because the insured could not possibly have relied on the insurer's conduct since the insured's payment *preceded* any action by the insurer.

We have found no California state court cases that address the precise relationship between section 554 and a no-voluntary-payments provision. (See *Etchell v. Royal Ins. Co.* (N.D.Cal. 1996) 165 F.R.D. 523, 550 (*Etchell*).) The issue has, however, been discussed by the federal courts. In *Etchell*, the magistrate concluded that section 554 was not intended to apply where a carrier is trying to use a no-voluntary-payment clause in the insurance policy to avoid paying for only those defense costs that were incurred before the tender was made. (*Etchell*, at p. 551.) In that case, the insureds did not tender their defense to their insurer until 11 months after they were served with a complaint. (*Id.* at p. 529.) The insurer initially denied both defense and liability under the policy without specifying any grounds therefore. (*Id.* at p. 552.) After a second tender, the insurer denied coverage under substantive provisions of the policy, but still made no reference to the late tender. (*Id.* at p. 553.) The first time the insurer suggested coverage was not available for pre-tender expenses under a no-voluntary-payments provision of the policy was five years later, in opposition to the insureds' motion for reimbursement of $227,409.67 in fees and costs incurred in defending against the underlying litigation. (*Id.* at pp. 544, 547, 550, 553.) The magistrate in *Etchell* rejected the insured's argument under section 554 that the insurer had waived any delay in presenting notice or proof of loss by failing to promptly object on that ground. (*Etchell*, at p. 553.) The magistrate surmised that lawyers and judges involved in cases involving no-voluntary-payment provisions had not referred to section 554 because they understood the statute was intended to apply only where a carrier is trying to use an alleged violation of the prompt notice requirements to avoid all of its obligations under the insurance policy, and not where a carrier is trying to use a no-voluntary-payment clause only to avoid paying for pre-tender defense costs. (*Etchell*, at pp. 550-551.)

Whether or not the magistrate correctly interpreted the silence in prior litigation, we find the reasoning of the court in *Etchell* persuasive, and more importantly, consistent with our Supreme Court's analysis of the issue in *Gribaldo*. Accordingly, we adopt it here. Appellant sought reimbursement only for *pre-tender* expenses incurred to defend the underlying action and incurred no expenses after he tendered the claim. Under these circumstances, respondent was not precluded by section 554 from denying liability for such costs under the no-voluntary-payments provision.

## 2. Denial of Coverage on Other Grounds Does Not Bar No-voluntary-payments Defense

Appellant contends respondent's "unequivocal denial bars the voluntary payments defense." As we understand it, defendant's contention is that, by initially denying policy coverage for reasons other than the no-voluntary-payments provision, respondent became barred from asserting the no-voluntary-payments provision as a defense to indemnification of the pre-tender expenses. This is not the law, and appellant's apparent reliance on *Jamestown, supra,* 77 Cal.App.4th 341, in support of his contention is misplaced.

An insurer's denial of coverage on one ground "does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." (*Waller v. Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 31.) Under California law, an insurer waives defenses to coverage not asserted in its denial only if the insured can show misconduct by the insurer or detrimental reliance by the insured. (*Id.* at p. 33.) This is in keeping with the general rule, discussed above, that an insurer cannot deny all liability, and at the same time be permitted to stand on a provision inserted in the policy for its benefit.

In *Jamestown, supra,* 77 Cal.App.4th 341, the court affirmed an order sustaining the carrier's demurrer to its insured's complaint for breach of contract. The court held a no-voluntary-payments provision precluded coverage for expenses voluntarily incurred by the insured, a home developer, to repair defects in construction, before it tendered the claim to the insurer. (*Id.* at p. 343.) The court noted that, in some circumstances (although not present there), a no-voluntary-payments provision would be deemed to not preclude coverage. For example, an insurer that has denied a tendered defense is not protected by the provision as to future costs incurred by the defense. In such a case, the "insured that has been abandoned by its carrier and left exposed to the possibility of a default judgment may protect its own interests by entering into a reasonable settlement without losing its right to recover on the policy. [Citations.] The no-voluntary-payments provision is superceded by an insurer's antecedent breach of its coverage obligation. And the burden of proof shifts to the insurer to show that settlement was not reasonable or was the product of fraud or collusion. [Citation.]" (*Id.* at pp. 347-348.)

Here, respondent did not abandon appellant. On the contrary, without legitimate reason, appellant did not tender the claim to respondent until after all expenses had been incurred. Thus, there was no antecedent breach as in *Jamestown.* Under the circumstances here, the no-voluntary-payments provision precludes appellant from recovering his pre-tender expenses.

### 3. *The "As Soon as Practicable" Provision Did Not Require Respondent to Establish Prejudice from Appellant's Pre-tender Voluntary Payments*

Also without merit is appellant's contention that respondent was required to establish it was prejudiced by appellant's failure to tender the claim to respondent "as soon as practicable" as required by the policy.

■ The rule appellant asserts is the "notice-prejudice" rule applicable to notice and cooperation conditions of insurance policies. (*Scottsdale Ins. Co. v. Essex Ins. Co.* (2002) 98 Cal.App.4th 86, 97 [119 Cal.Rptr.2d 62].) It is not generally applicable outside that context. (*Ibid.*) ■ Specifically, in the context of a no-voluntary-payments provision, it is "not part of the equation in evaluating denial of pre-tender costs. [Citation.]" (*Tradewinds, supra,* 97 Cal.App.4th at p. 711; *Truck, supra,* 79 Cal.App.4th at p. 977 [prejudice requirement applies only where insurer uses belated notice to defend against payment of losses and costs incurred *after* notice]; *Jamestown, supra,* 77 Cal.App.4th at pp. 349-350 [same]; *Xebec Development Partners, Ltd. v. National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 566 [15 Cal.Rptr.2d 726] [same]; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶ 3:170.7; 6 Witkin, Summary of Cal. Law (2002 supp.) Torts, § 1139B, p. 404.)

■ *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303 [32 Cal.Rptr. 827, 384 P.2d 155], does not compel a contrary result. In that case, the trial court denied recovery to a third party based on the insured's breach of a policy provision requiring him to cooperate with the insurer in effecting settlement of claims or defending against suits. Our Supreme Court reversed, holding that breach of a cooperation clause in an insurance contract is only a valid defense where it is shown that the insurer was substantially prejudiced by the breach. (*Id.* at p. 305.) *Campbell* is distinguishable both in that it involved a cooperation clause, which is subject to the prejudice rule, and in that the insurer was attempting to use the insured's noncooperation to escape all liability under the policy. (See *Faust v. The Travelers* (9th Cir. 1995) 55 F.3d 471; *Etchell, supra,* 165 F.R.D. at p. 548.) ■ Here, by contrast, respondent is using the no-voluntary-payments provision only to justify its contention that it is not liable for pre-tender expenses; something it has every right to do under *Gribaldo, supra,* 3 Cal.3d 434, and its progeny.

Finally, appellant's reliance on *Shell Oil Co. v. National Union Fire Ins. Co.* (1996) 44 Cal.App.4th 1633 [52 Cal.Rptr.2d 580] (*Shell Oil*), is also unavailing. Although discussed in its opening brief in terms of respondent's obligation to show prejudice, *Shell Oil* was not decided on that ground. There, the trial court awarded the insured their defense costs for a four-month period prior to tender. The insureds argued they were " 'compelled'

. . . to respond to legal process and to protect their legal interests," before contacting the carrier. (*Id.* at p. 1648.) The Court of Appeal affirmed. *Shell Oil* is not a prejudice case at all; rather, it is an affirmation that certain claimed "voluntary" payments may be in fact involuntary. (*Ibid.*; see also *Jamestown, supra,* 77 Cal.App.4th at p. 350.) The Court of Appeal essentially concluded substantial evidence supported the finding of involuntariness during the four-month period before the insured found its policy and tendered the defense. (See also *Fiorito v. Superior Court* (1990) 226 Cal.App.3d 433, 438-439 [277 Cal.Rptr. 27] [whether a payment was voluntary created a triable issue of fact defeating summary judgments].) Unlike *Fiorito* and *Shell Oil,* which both involved four-month delays, appellant waited three years before tendering the defense, under circumstances the trial court described as "mysterious." Sufficient evidence supported the trial court's finding that the insured's pre-tender payments were voluntary and that the belated tender was a ruse to exact defense costs on an uncovered claim.[3]

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

Cooper, P. J., and Boland, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 2003.

---

[3]Equally unhelpful are *Aerojet-General Corp. v. Transport Indem. Co.* (1997) 17 Cal.4th 38, 64 [70 Cal.Rptr.2d 118, 948 P.2d 909], *Jamestown, supra,* 77 Cal.App.4th 341, and other cases cited by appellant that hold that the insured's antecedent breach of the policy bars reliance on the no-voluntary-payments provision. Here, there was no breach. The insurer was not even aware of the claim until after the defense payments were made, it could, thus, not have committed any antecedent breach.