**FILED**

MAY 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, | No.  22-55272 |
| Plaintiff-Appellant, | D.C. No. 8:21-cv-00607-DOC-JDE Central District of California, Santa Ana |
| v. | |
| NEUROPATHY SOLUTIONS, INC., DBA Superior Health Centers, | ORDER |
| Defendant-Appellee, | |
| and | |
| RIGOBERTO BERNAL, an individual; et al., | |
| Defendants. | |

Before:  LEE, BRESS, and MENDOZA, Circuit Judges.

The decision in this case has been amended to state that "The district court shall enter judgment for MBIC."  Appellee's petition for panel rehearing, Dkt. 47, is otherwise DENIED.  No further petitions for rehearing will be accepted.  This order shall constitute the mandate of this Court.

NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAY 5 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MASSACHUSETTS BAY INSURANCE COMPANY, | No. 22-55272 |
| Plaintiff-Appellant, | D.C. No. 8:21-cv-00607-DOC-JDE |
| v. | |
| NEUROPATHY SOLUTIONS, INC., DBA Superior Health Centers, | AMENDED MEMORANDUM[*] |
| Defendant-Appellee, | |
| and | |
| RIGOBERTO BERNAL, an individual; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted March 17, 2023
Pasadena, California

Before: LEE, BRESS, and MENDOZA, Circuit Judges.

In this diversity action under California law, Massachusetts Bay Insurance

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Company (MBIC) seeks reimbursement of $2 million that it paid under a reservation of rights to settle litigation brought against its insured, Neuropathy Solutions, Inc. (Neuropathy). On cross-motions for judgment on the pleadings, the district court held that MBIC had a duty to defend and indemnify Neuropathy in the underlying case (the *Bernal* action), and that MBIC was thus not entitled to any reimbursement. We have jurisdiction under 28 U.S.C. § 1291. We review the district court's ruling de novo. *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021). We reverse.[1]

1. MBIC satisfied the prerequisites for seeking reimbursement of the amount it paid to settle the *Bernal* action on Neuropathy's behalf. To seek reimbursement under California law, an insurer must provide (1) a timely and express reservation of rights; (2) an express notification to the insured of the insurer's intent to accept a proposed settlement offer; and (3) an express offer to the insured that it may assume its own defense in the event that the insured does not wish to accept the proposed settlement. *Blue Ridge Ins. Co. v. Jacobsen*, 22 P.3d 313, 320–21 (Cal. 2001).

MBIC provided a timely and express reservation of rights in its letter of February 25, 2021. In its letter of May 13, 2021, MBIC informed Neuropathy of its intention to settle the claims for the $2 million policy limit, subject to Neuropathy's approval and MBIC's reservation of rights. This letter also informed Neuropathy of

---

[1] MBIC appeals only the district court's ruling on the duty to indemnify.

its "right to assume the further handling of this matter going forward" if Neuropathy did not wish to settle the claims for $2 million. Neuropathy signed the settlement agreement on May 28, 2021. Contrary to Neuropathy's argument, MBIC gave Neuropathy sufficient time to consider the proposed settlement. *See id.* at 315 (indicating that insurer provided notice on June 4 and requested a response by June 10, where the settlement offer was to expire on June 12).

2. Under California law, "[t]he insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved." *Buss v. Superior Ct.*, 939 P.2d 766, 773 (Cal. 1997). "By contrast, the insurer's duty to defend runs to claims that are merely potentially covered, in light of facts alleged or otherwise disclosed." *Id.* Thus, "the insurer's duty to defend is broader than its duty to indemnify." *Id.* The district court erred by invoking the broader duty-to-defend standard (potentiality of coverage) to require MBIC to cover not just the cost of defending the underlying *Bernal* suit but also the $2 million paid to settle it. We thus proceed to evaluate whether the *Bernal* action actually fell within the MBIC policy as written.

3. To the extent that the underlying *Bernal* action falls within the coverage provisions of the insurance policy (i.e., to the extent Neuropathy's liability arose out of an accidental "occurrence"), coverage is excluded under the policy's "Professional Services" exclusion. That provision excludes:

> "Bodily injury", "property damage", [and] "personal and advertising injury" caused by the rendering of or failure to render any professional

3

service, advice or instruction:

(1) By [the insured]; or
(2) On [the insured's] behalf; or
(3) From whom [the insured] assumed liability by reason of a contract or agreement,

regardless of whether any such service, advice or instruction is ordinary to any insured's profession.

Additionally, the insurance policy provides that professional services include, among other things, "[l]egal, accounting or advertising services," "[m]edical . . . or nursing services treatment, advice or instruction," and "[a]ny health or therapeutic service treatment, advice or instruction."[2]

In addition, under California law governing commercial general liability policies, "[p]rofessional services are defined as those arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual." *Tradewinds Escrow, Inc. v. Truck Ins. Exch.*, 118 Cal. Rptr. 2d 561, 568 (Ct. App. 2002) (quotation omitted). This "is a broader definition than 'profession,' and encompasses services performed for remuneration." *Id.* (quotation

---

[2] The policy extended this exclusion to wrongdoing by agents:

> This [professional services] exclusion applies even if a claim alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

omitted).  The "unifying factor" is "whether the injury occurred during the performance of the professional services, not the instrumentality of injury." *Id.*

Based on California case law, the insurance policy's text, and the operative complaint in the *Bernal* action, Neuropathy's liability in *Bernal* fell within the "Professional Services" exclusion.  Starting from the very first sentence of the *Bernal* complaint, it is evident that Neuropathy incurred liability as a result of the professional services it provided: "This complaint arises from a series of falsely advertised, recklessly administered, non-FDA approved 'stem cell' injections Mr. Bernal received that nearly killed him and left him a permanent paraplegic from the waist down."  The entire gravamen of the *Bernal* complaint was that Neuropathy engaged in deceptive and illegal advertising and business practices in connection with the provision of medical services.  Neuropathy was thus liable for providing "advertising services," "[m]edical . . . or nursing services treatment, advice or instruction," or "[a]ny health or therapeutic service treatment, advice or instruction," all of which are excluded under the "Professional Services" exclusion.

It does not matter that Elite Medical Group (EMG), not Neuropathy, allegedly employed the medical professionals who performed the injection, nor does it matter that Neuropathy's contract with EMG purported to assign to Neuropathy only administrative duties.  As we noted, the "Professional Services" exclusion extends to wrongdoing in the supervision and monitoring of others in the provision of

5

professional services, and Neuropathy incurred liability because of its provision of professional advertising and medical services, not inadequate recordkeeping or poor customer service. Finally, the complaint's allegation that Neuropathy engaged in discriminatory "marketing techniques and high-pressure sales tactics" falls within the "Professional Services" exclusion for advertising services and health advice or instruction.

Neuropathy's liability in the *Bernal* action was thus excluded from coverage, and MBIC is entitled to reimbursement of the $2 million it paid to settle that lawsuit. The district court shall enter judgment for MBIC.

**REVERSED.**