**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTINA WEBB, on behalf of herself, all others similarly situated, and the general public,
*Plaintiff-Appellant*,

v.

TRADER JOE'S COMPANY,
*Defendant-Appellee.*

No. 19-56389

D.C. No. 3:19-cv-01587-CAB-WVG

OPINION

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted April 16, 2021
Pasadena, California

Filed June 4, 2021

Before: Richard A. Paez and Lawrence VanDyke, Circuit Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge VanDyke

---

[*] The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

## SUMMARY**

### Federal Preemption

The panel affirmed the district court's dismissal, as federally preempted, of plaintiff's state-law based claims arguing that Trader Joe's Company's federally regulated retained water labels on poultry products were misleading.

The federal Poultry Products Inspection Act ("PPIA") regulates the retained water data collection process and label production for covered poultry products. Under the PPIA, Trader Joe's was required to maintain its retained water data collection protocol on file and make it available to the Food Safety and Inspection Service ("FSIS") for review. The plaintiff argued that she used a data collection protocol that produced different percentages of retained water than those displayed on Trader Joe's poultry labels, and thus Trader Joe's labels were misleading in violation of state law.

Federal law expressly preempts claims relating to regulated labels that would impose requirements "in addition to, or different than those" already required by federal law. 21 U.S.C. § 467e. The panel held that plaintiff's state law claims were preempted because they sought to impose the requirements of plaintiff's retained water protocol in addition to Trader Joe's FSIS-required protocol. Further, the panel affirmed the district court's dismissal with prejudice because plaintiff's counsel confirmed that plaintiff could not

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

assert that her data collection protocol was the same as that used by Trader Joe's.

## COUNSEL

Michael T. Houchin (argued), Ronald A. Marron, and Lilach Halperin, Law Offices of Ronald A. Marron APLC, San Diego, California, for Plaintiff-Appellant.

Angel A. Garganta (argued), Tyler G. Welti, and Amit Rana, Venable LLP, San Francisco, California, for Defendant-Appellee.

## OPINION

VANDYKE, Circuit Judge:

This case requires us to determine whether an individual is preempted from bringing state law-based claims arguing that a company's federally regulated retained water labels on poultry products are misleading. Plaintiff Christina Webb argues that she used a data collection protocol that produced different percentages of retained water than those displayed on Trader Joe's poultry labels, and thus Trader Joe's labels are misleading in violation of state law. We conclude that Webb's claims are preempted by federal law regulating poultry labeling and retained water measurement protocols. *See* 21 U.S.C. § 467e.

Webb purchased "All Natural Boneless Chicken Breasts," "All Natural Chicken Thighs," and "All Natural Chicken Wings," (the Products) from various Trader Joe's locations. The Products were each marked with a label

stating that they contained "[u]p to 5% retained water." Webb had the Products examined by a food testing lab, which concluded that the Products contained more retained water than claimed by Trader Joe's labels.

The federal Poultry Products Inspection Act (PPIA) regulates the retained water data collection process and label production for covered poultry products. Under the PPIA, Trader Joe's was required to maintain its retained water data collection protocol on file and make it available to the Food Safety and Inspection Service (FSIS) for review. FSIS could require changes to the protocol within 30 days of receiving notice of a new or revised protocol. 9 C.F.R. § 441.10(c). The retained water claims on the Products' labels were also inspected by FSIS because the generic retained water claims were affixed alongside special statements and were "required to [be] submit[ed] for evaluation." Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. 66826-01, 66827 (Nov. 7, 2013).

Federal law expressly preempts claims relating to regulated labels that would impose requirements "in addition to, or different than those" already required by federal law. 21 U.S.C. § 467e. Because Webb's state law claims seek to impose the requirements of her retained water protocol in addition to Trader Joe's FSIS-required protocol, her claims are preempted. *See id.* And because Webb's counsel confirmed at oral argument that she cannot assert that her data collection protocol is the same as that used by Trader Joe's, we affirm the district court's dismissal with prejudice

## I.  Facts

### A.  Webb's Testing

Webb purchased multiple Trader Joe's Products from various stores in the San Francisco area over the course of several months.  The Products "declare[d] a maximum of 5% Retained Water."  Webb took the Products to a San Francisco food testing laboratory to determine whether the Products' labels correctly reflected the retained water content.  The laboratory's testing concluded that the Products in fact "contained, on average, 9% Retained Water."  Based on this difference, Webb filed a lawsuit alleging that "Trader Joe's Chicken Products . . . include[d] unlawfully large amounts of Retained Water . . . caus[ing] consumers to pay more for economically adulterated and misbranded products."  But she failed to specify whether the retained water process utilized in her independent examination of the Products was identical to the protocol utilized by Trader Joe's pursuant to regulation.  Her putative class action against Trader Joe's alleges violations of (1) California's Consumers Legal Remedies Act; (2) California's Unfair Competition Law; and (3) California's False Advertising Law; and causes of action for (4) Breach of Express Warranties; (5) Breach of Implied Warranties; (6) Theft by False Pretenses; and (7) Unjust Enrichment.

### B.  The Federal Law Background

Poultry labels are federally regulated under the PPIA.  Congress enacted the PPIA, codified at 21 U.S.C. § 451, empowering the Secretary of Agriculture to ensure that "poultry products . . . are . . . not adulterated, and properly marked [and] labeled."  The Secretary delegated authority to

the Administrator of FSIS to oversee the labeling of poultry products.  9 C.F.R. § 300.2(a).

In order to produce poultry products containing any amount of retained water, a covered poultry producer like Trader Joe's must "maintain on file and make available to FSIS its written data-collection protocol" for how the company arrived at the claimed retained water percentage. *Id.* § 441.10(c)(1).  FSIS reviews the protocol from the poultry producer and "may object to or require the establishment to make changes in the protocol."  *Id.* § 441.10(c)(2).[1]   While this does not constitute "pre-approval of [such] protocols," FSIS does require that any company using labels with retained-water data "notify [FSIS] as soon as the protocol [to measure the retained water] is available for review" and FSIS will "object to or require changes" as necessary within 30 days of receipt of the protocol.  Retained Water in Raw Meat and Poultry Products; Poultry Chilling Requirements, 66 Fed. Reg. 1750-01, 1755 (Jan. 9, 2001).  This review allows FSIS to validate that "the protocols are scientifically valid, that the data collected under them will reflect water-retention amounts that are unavoidable, *and that the data support the*

---

[1] While, as noted above, the agency's regulations only require that the data collection protocol be "made available" to the agency—thereby maximizing the agency's flexibility—as a practical matter it appears that FSIS typically requires that regulated entities actually submit their protocols to the agency.  FSIS Directive 6700.1, Retained Water in Raw Meat and Poultry Products 4 (U.S.D.A. 2002), https://www.fsis.usda.gov/sites/default/files/media_file/2020-07/6700.1.pdf.  But for preemption purposes, it is sufficient that the regulations require that the protocol be made available to the FSIS and that FSIS decided not to require changes to that protocol.

*water-retention statements on product labeling*." *Id.* at 1756 (emphasis added).

Labels making retained water statements are generically approved, meaning they "may be used without being submitted to [FSIS] for approval provided that they show all mandatory features and are not false or misleading." *Id.* at 1755. Such labels may still be "spot checked" by FSIS through "in-plant labeling verification activities [of generically approved labels], such as verifying that all ingredients are appropriately declared on labeling." Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. at 66832.

But where a poultry label has "special statements," meaning statements "not defined in the Federal . . . regulations or the [FSIS] . . . Policy Book," 9 C.F.R. § 412.1(e), the label must be "presented in the context of a final label," *id.* at § 412.1(c)(3), and "submitted for approval" by FSIS staff, *id.* § 412.1(b). "Special statements and claims" include "health claims, ingredient and processing method claims," and "claims regarding the raising of animals." *Id.* § 412.1(e).

Trader Joe's poultry labels at issue in this case include both generic retained water claims and special statements, including "no antibiotics ever," "no added hormones," and "all vegetarian fed." When special statements are included in conjunction with claims that are normally generically approved, "[a]s a result of its decision to continue providing for the review of all labels, FSIS . . . has *not* revised the regulatory text to state that [it] will review only the special statement . . . and not the rest of the submitted label." Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. at 66829 (emphasis added). Once "inspected and passed," the U.S. Department of Agriculture affixes an

"official inspection legend" on the label.  9 C.F.R. § 381.96.
To receive such a mark, the inspector must have "on file
evidence that such device has been approved in accordance
with the provisions of this subpart."  *Id.* § 381.137.

## II.  Procedural History

Webb filed this putative class action in San Diego
Superior Court, and Trader Joe's removed the case to federal
district court.  Trader Joe's then filed a Rule 12(c) motion
for judgment on the pleadings, and the district court
"analyze[d] the language of the [PPIA] statute and the
overall statutory scheme," to determine if Webb's claims
were preempted.  The district court examined the PPIA and
noted that it "prohibit[ed] the sale of products with false or
misleading labeling" and that FSIS "inspects and approves
product labels . . . . before products bearing that label are
sold in interstate commerce."   The district court also
observed that Trader Joe's must "maintain on file and
available to FSIS its written data-collection protocol which
must explain how data will be collected and used to
demonstrate the amount of retained water in the product,"
and "FSIS may object to or require . . . changes in the
protocol."

The district court concluded that because Trader Joe's
"fully complied with the federal requirements to make the
'Up to 5% Retained Water' claim on its labels," claiming
those products are mislabeled in violation of state law
"would necessarily require additional requirements that are
not equivalent to the PPIA."  Because "preapproval of labels
must be given preemptive effect," the court concluded
"Plaintiff's state law claims are expressly preempted under
the PPIA" and dismissed Webb's complaint with prejudice.
Webb timely appealed.

**DISCUSSION**

We have jurisdiction under 28 U.S.C. § 1291 and "review de novo a dismissal by judgment on the pleadings under Rule 12(c)." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Because motions for judgment on the pleadings are "'functionally identical' to Rule 12(b)(6)" motions, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted), when ruling on either type of motion "courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

This case requires the court to determine whether Webb's claims are preempted under 21 U.S.C. § 467e, which establishes that states may not impose requirements "in addition to, or different than those" described in the PPIA. "Where the intent of a statutory provision that speaks expressly to the question of preemption is at issue, 'we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Atay v. County of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016)).

Here, Webb's claims are preempted for two reasons: First, allowing Webb to impose her retained water protocol on Trader Joe's via state law would require Trader Joe's to conform to a different data collection process than the protocol that was properly developed and made available to FSIS for review as required by federal law. Second, requiring Trader Joe's to change its labeling to be consistent

with *Webb*'s retained water data would require changes to poultry labels that were approved by FSIS.  Because Webb's state law claims seek to impose requirements "in addition to" those outlined in the PPIA, her claims are preempted.[2]

## I.  FSIS Did Not Object to Trader Joe's Retained Water Data Collection Protocol, Expressly Preempting Webb's Claims.

Webb attempts to avoid federal preemption by arguing that because Trader Joe's based the Products' labels on information that was not preapproved by FSIS, she can bring her state law claims that would concurrently enforce the PPIA without imposing additional "requirements" on Trader Joe's.  She also argues that the district court's determination that the data reflected on the label was preapproved incorrectly assumed a disputed issue of fact in favor of Trader Joe's, the moving party.

Webb's claims cannot be reconciled with the federal regulatory scheme.  That scheme requires Trader Joe's to make its poultry retained water data collection protocol available to FSIS, which "may object to or require changes" as necessary within 30 days of receipt of notice that the protocol is available.  9 C.F.R. § 441.10(c)(1); Retained Water in Raw Meat and Poultry Products; Poultry Chilling Requirements, 66 Fed. Reg. at 1755.  This constitutes federal approval of Trader Joe's protocol because one purpose of FSIS's regulatory opportunity to review is to confirm "that the data support the water-retention statements on product

---

[2] Because Webb cannot allege her retained water data collection process is the same as the one used by Trader Joe's, we do not reach the issue of whether her state law claims are an improper attempt to privately enforce 21 U.S.C. § 467e.

labeling." *Id.* at 1756. The district court was correct that because FSIS allowed Trader Joe's products to be "placed for sale [it] lends to the conclusion that no such objection or request [for changes in the protocol] was made."[3] The federal regulatory process here allows for review of a company's water retention data collection protocol before their poultry products enter commerce, and FSIS's decision not to object or otherwise require changes operates as federal approval of that protocol.

Because the retained water data supporting the claims made on the Products' labels were validated by federal regulators according to the federally proscribed method, Webb's claims that Trader Joe's Products' labels are in fact invalid and misbranded are federally preempted. *Cf. Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012) ("The FMIA's preemption clause sweeps widely—and in so doing, blocks the applications of [the California state statute which]

---

[3] This court may take judicial notice of a federal agency's interpretation of its own preemption provisions in an amicus brief. *See Riegel v. Medtronic, Inc.*, 552 U.S. 312, 328 (2008) (citing the FDA's regulatory interpretation provided in an amicus brief). We thus take judicial notice that the USDA explained in an amicus brief in a similar case that "FSIS's decision to approve a label and to allow it to be affixed to products sold in commerce . . . embodies a determination that the label does not violate the labeling requirements under the PPIA or its implementing regulations." Br. for United States as Amicus Curiae Supporting Appellees, *La Vigne v. Costco Wholesale Corp.*, 772 Fed. App'x 4 (2nd Cir. 2019) (No. 18-415) 2019 WL 1723825 at *12; *see also La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 505 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019) (determining that "the Court may presume that the Kirkland Canned Chicken label at issue was approved by the FSIS" because it required pre-approval and was used in commerce). Contrary to Webb's argument, this is not a disputed issue of fact, but rather an indisputable characteristic of how the federal regulatory scheme functions. The district court did not draw inferences in Trader Joe's favor—it correctly interpreted the statutory scheme.

. . . . compels [swine slaughterhouses] to deal with nonambulatory pigs on their premises in ways that the federal Act and regulations do not."); *Jones v. Rath Packing Co.*, 430 U.S. 519, 531–32 (1977) ("Thus, the state law's requirement . . . is 'different than' the federal requirement, which permits manufacturing deviations and variations . . . . [Plaintiff's] packaged bacon [claims] . . . are pre-empted by federal law."); *see also Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 118 (2d Cir. 2018) ("We agree with the district court . . . and therefore conclude that Parents' [misleading dairy product label] claims are preempted. There is simply no way to rule in Parents' favor without contradicting the certification decision, and, through it, the certification scheme that Congress enacted in the OFPA.").[4] The federal regulatory scheme is permissive and allows a broad method of compliance, in that it allows the company to craft its own data collection process and make it available for FSIS review. Requiring Trader Joe's to follow Webb's process, or be penalized unless it follows a process different from the

---

[4] All of Webb's state law claims are preempted, including her warranty claims. Because "FSIS's . . . regulations dictate *how* a . . . claim can be stated on a label and *the basis* for making such a claim, Plaintiff's breach of express warranty claims that contradict the FSIS's nutrition labeling regulations are preempted." *Kuenzig v. Kraft Foods, Inc.,* No. 8:11-cv-838-T-24 TGW, 2011 WL 4031141, at *7 (M.D. Fla. Sep. 12, 2011) (distinguishing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 440–47 (2005), because the Supreme Court in *Bates* found the federal statute at issue was not sufficiently comprehensive to preempt the plaintiffs' state and common law claims, while the PPIA includes specific requirements for "how" a producer makes claims and the "basis for making [those label] claims," such that express warranty claims "are preempted"). The Supreme Court has emphasized that it has "likewise held that a provision pre-empting state 'requirements' pre-empted common-law duties," and declined to adopt plaintiffs' contention that "implied-warranty claims are not pre-empted." *Riegel*, 552 U.S. at 324, 327.

one it developed pursuant to regulation, would be more restrictive than the federal scheme governing Trader Joe's poultry retained water data collection and labeling.

Webb acknowledges that her suit "would . . . be preempted if this Court finds that this lawsuit seeks to impose requirements on Defendant that are in addition to or different from the requirements imposed by the PPIA." There is no escaping the conclusion that this is precisely what Webb's state law claims, if allowed to proceed, would do. Because her claim that Trader Joe's incorrectly labeled the Products would necessarily impose a data collection protocol different from, or in addition to, that required in the statute and regulations implementing the PPIA, her claims are preempted.

## II. FSIS Reviewed Trader Joe's Labels, Expressly Preempting Webb's Claims.

The district court also noted that the labels were "review[ed] . . . for approval in their entirety," as a specific inspection mark on the label demonstrated the Products had passed federal inspection. *See* 9 C.F.R. § 381.96. Webb argues that the labels' retained water claims are generic and thus were not preapproved. But when a poultry label includes special statements in addition to general statements, FSIS reviews the entirety of the label. Prior Label Approval System: Generic Label Approval, 78 Fed. Reg. at 66829. Trader Joe's labels include three such "special statements": (1) "no antibiotics ever," (2) "no added hormones," and (3) "all vegetarian fed." Thus, under the applicable federal regulatory scheme, FSIS inspected both the generic retained water claims and the special statements regarding the health and animal raising claims. *Id.* ("FSIS . . . has not revised the regulatory text to state that the Agency will review only the special statement or claim, and not the rest of the submitted

label, unless otherwise requested."). The district court took judicial notice of the labels, and properly considered the inspection of the labels as part of the preemption analysis, and we agree that the retained water statement on the label was federally approved.[5] Any additional label requirements Webb seeks to place on Trader Joe's through the application of her retained water data would necessarily be "different than" those required by the PPIA, and her claims are thus preempted. 21 U.S.C. § 467e.

## III.    The District Court did not Abuse its Discretion by Dismissing with Prejudice.

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). Here, Webb claims there is a "narrow gap" through which her claims survive: she is "suing for conduct that *violates*" the PPIA but not "*because* the conduct violates" the PPIA (rather, because it violates applicable state law), so her claims are not preempted. *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013) (citation omitted). But, as discussed, federal law does not allow Webb to impose a different data collection protocol on Trader Joe's. So the only possible "narrow gap" where Webb's claims might not be preempted would be if she could plausibly claim she used Trader Joe's exact data collection protocol

---

[5] Webb's argument that "the Products could become adulterated and therefore fail to conform to those label claims at any later time" after FSIS inspection, raises a new argument not developed in the opening brief or the court below. This argument is waived and we therefore do not address it. *See Lopez v. Pac. Mar. Ass'n*, 657 F.3d 762, 766–67 (9th Cir. 2011).

and yet obtained different results, thereby evincing that Trader Joe's is misrepresenting its data to FSIS.

But at oral argument Webb's counsel was unable to confirm that Webb used Trader Joe's protocol to arrive at her retained water numbers, or that the protocol made available to FSIS is even publicly accessible. Webb thus cannot amend her complaint to claim that her retained water data collection protocol was *the same* as Trader Joe's protocol without first getting information from Trader Joe's itself. We cannot "condone the use of discovery to engage in 'fishing expedition[s]'" where, like here, it is obvious that Webb has no basis other than gross speculation to claim that Trader Joe's is misrepresenting the data provided by its testing protocol. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted). We accordingly affirm the district court's dismissal with prejudice.

## CONCLUSION

The PPIA preempts state law claims that would impose additional requirements on covered poultry producers. Trader Joe's label—including its retained water statement—was approved by federal regulators. And Webb has not alleged, nor can she allege, that her data collection protocol is the same as the process Trader Joe's made available for federal government review. So requiring labeling in conformance with Webb's testing protocol would necessarily impose requirements beyond those required by federal law. Her claims are therefore preempted under § 467e, and she cannot amend her complaint to avoid preemption. The district court did not err in dismissing her claims with prejudice.

**AFFIRMED**.